The next case is Lewis v. U.S., 25-103-6. Good morning, Your Honors, and may it please the Court. Michael Kuhn on behalf of Appellants Kate and Jeffrey Lewis. I'd like to reserve two minutes for rebuttal. Ms. Lewis has terminal metastatic breast cancer because her medical provider failed to diagnose the malignant tumor. She pursued a claim against the United States and complied with every timing requirement under the Federal Tort Claims Act. But according to the trial court, Ms. Lewis can't bring a claim against the United States because she discovered her cancer 32 days too early, triggering Colorado's medical malpractice statute of repose. The trial court's grant of summary judgment is wrong. It rests on a misreading of the Colorado's statute of repose, reopens constitutional issues addressed by the Colorado Supreme Court, and resolves disputed material facts that must go to a jury as to when Ms. Lewis discovered, or should have discovered, the nature, extent, and cause of her cancer. But more fundamentally, Colorado's statute of repose is conflict preempted by the Federal Tort Claims Act, as applied. So in other words, only if we adopt the district court's interpretation of the statute of repose is it preempted? Correct, Your Honor. And the rule that we're advocating for today is a narrower rule. And I'll explain that further. We submit and we argued below that state statutes of repose are always conflict preempted. But the situation here involved kind of a unique set of facts where the claim accrued shortly before the expiration of the statute of repose and where there was insufficient time to comply with a six-month requirement. So the FTCA, in Congress in passing it, created a framework that favored the administrative resolution of claims. And in that vein, Congress said that just before you can sue the United States, you have to file a claim with the agency, give the agency at least six months to consider it, and as this court noted in Lopez, that rule has very important underpinnings, and that is it gives the agency notice of a claim, an opportunity to investigate, and a chance to settle it outside of litigation, which was Congress's preferred method for resolving claims. Colorado's statute of repose creates a material impediment to that administrative process and, as applied here, made compliance with the two statutes impossible. Allowing a state statute of repose to short-circuit the FTCA's mandatory administrative process shortens the presentment period, pressures premature filing, and undermines Congress's settlement-focused scheme. Congress did not create the administrative process to operate under the constant threat that state law would extinguish the claim before the process could even conclude. This case illustrates the point. The trial court found that Ms. Lewis discovered her cancer on December 31, 2019, and that the statute of repose expired February 1, 2020. So even if Ms. Lewis had filed an administrative claim, the very day that the trial court held that she had discovered her cancer, she still could not have pursued it against the United States, whereas a private person in that circumstance could be liable. We acknowledge that no circuit court has held that the FTCA preempts state statute of repose, but we submit that a narrow rule that would hold that state statutes of repose are preempted in those rare cases such as Ms. Lewis's, where the statute of repose extinguishes a claim when there's a short period of time after accrual. Well, and Congress said in the FTCA statute that, you know, if private persons, if there's no liability against a private entity, then there's no liability against the government. Did they indicate any exception to that rule? I guess I understand your argument, but I don't see how that really comes into play. Your Honor, Congress— Which is that just fundamental sense of fairness and that it's contrary to everything the FTCA is about, but the FTCA contains this provision saying if a private entity can't be liable, neither can the government, and it doesn't say unless it's not very fair for that to happen, which is— Your Honor, we're not relying on express preemption. We're relying on conflict preemption. Yeah. And our argument is that Congress, in passing the FTCA, supplied its own deadlines. We're dealing with a statute of repose here for what I would term is not core substantive. It doesn't deal with elements of liability, standards of care, damages, theories, and the like. But when it comes to conflict preemption, you can also— I think that the point you're making highlights the impossibility concern. Sitting on December 31, 2019, had Ms. Lewis been with a private provider, she could have sued them in theory. She could not have because she had a claim against the United States and was required to go through the six-month administrative process. And so there's an impossibility tension there where she could not have pursued a claim even if she wanted to. You didn't make any argument below, did you? And I think you're not making it on appeal that this is simply not— in the context of this Colorado statute, it's not a substantive statute of repose. I mean, it's part of one section. It's essentially a unitary statute of limitation. And when you get to section—to the exceptions, it refers to the limitation of actions provided in subsection 1 when it's suggesting that the statute of repose isn't going to apply, indicating that the statute of repose is part of a unitary statute of limitation. Your Honor, we conceded below and on appeal that the statute of repose here is substantive. Yeah, I'm wondering why you did that. Because there was—I think the great weight of cases across the nation hold that statute of repose is unlike— Don't you have to look at the statute in this case? Not generally statutes of repose. The statute in this case and how it is designed. And, Your Honor, I think there was discussion in Judge Walsh— And this isn't just some general statute of repose. This is a statute of repose in Colorado for medical malpractice actions. And then there are these exceptions. Again, Your Honor, that point was not argued below, so we didn't brief it on appeal. I would say, though, even if we concede that it's substantive, a substantive law, from our view, can still be conflict preemptive when it undermines a central pillar of the FTCA, specifically the administrative process. And so when you look at the circuit court cases that the United States have relied on, I don't believe such a rule would be inconsistent with those cases insofar as Baldwin and Smith were very brief, unpublished decisions that didn't address the issue. Agudas, Huddleston, and Anderson all involved plaintiffs who, in theory, could have complied with both the statute of repose and the six-month administrative requirement. In other words, there was at least six months remaining upon discovery prior to the expiration of the statute of repose. But then that leaves Bennett and Jones. But in those cases, the statute of repose had already expired prior to the approval of a claim. But Bennett is useful in one regard. The Ninth Circuit, in saying that the statute of repose is basically incorporated as substantive law, in footnote nine left open the possibility what it turned as an equitable exception or a different rule that might apply when a claim accrues shortly before the expiration of the statute of repose, and the administrative process would be frustrated thereby. Well, Your Honors, we're here today on those facts, and we think that the Court can create a narrow rule consistent with footnote nine in Bennett. Counsel, can I ask you about the accrual date? Do you view that as a question of fact? I do, Your Honor, and that is another very simple way this Court can reverse the trial court's grant of summary judgment. The relevant date here is February 1, 2020, when the statute of repose, according to the trial court, accrued. So even if we accept the trial court's reasoning on preemption, we accept its interpretation of the statute, we still contend that there were material facts of events that occurred post-February 1, 2020 that create a tribal issue of fact as to whether Ms. Lewis knew the nature, extent, and cause of her cancer. So you would say or agree that if we found there is a dispute of material facts, so summary judgment was not appropriate as it relates to the accrual date, then your as-applied preemption argument may not need to be reached? Absolutely, Your Honor. The Court can easily resolve this case on summary, and there would be good reason to do so. Sitting on January 31, 2019, excuse me, 2020, all that Ms. Lewis knew at that point in time is that she had breast cancer that had metastasized to a single lymph node. She had yet to meet with an oncologist. She didn't know whether the cancer would be life-ending. Why does any of that matter? Because, Your Honor, the Colorado Court of Appeals decision in Lisio v. Pinson is why. And what Lisio v. Pinson says is that when you look at knowledge of an injury, what is required is knowledge of not only the nature of the injury, but also the extent of the injury. Well, okay, fine. So on February 1, 2017, the nurse looks at her lump and says, it's fine, no problem, nothing to worry about. December 31, she realizes she has cancer. January 31, she realizes it's metastasized. Okay, well, she thought on February 1, 2017, that she had nothing to worry about. She knows that she has now cancer. It seems to me the $64,000 question is whether or not the cancer that was detected on December 31, 2019 was the same lump that she thought was nothing on February 1, 2017. But you haven't made that argument. We have, Your Honor. And I think that argument was made below specifically. The trial court viewed the question of accrual through the lens of worsening of the condition. Well, there was no evidence to show that between what nurse Trexler failed to diagnose in 2017, in February 1, that that condition had worsened. So I think that there's a distinction between the worsening of what was then thought of a benign cyst is quite different than the worsening of terminal cancer. So I think when you look at it through that lens, in the McCullough case out of the District of Wisconsin, I think, addresses that. There was no evidence to show that there had been a worsening of the cancer between that time. And on summary— I'm not 100% sure that what— if I'm correctly interpreting what that argument means, are you saying that on the 11th of February, when she sees the oncologist, that the oncologist is the first time that anybody ever tells her that this problem, this cancer, this metastasized cancer in your breast, is exactly what nurse Trexler looked at three years and a couple of months ago? Your Honor, there was no specific statement in that regard during the meeting. Now, the appointment she had with her oncologist was a lengthy appointment. The notes were exhaustive. But— Was that the February 10th? February 11th, I believe, or 10th, yes. Yeah. That I think on summary judgment, in granting Ms. Lewis all favorable inferences, that we can assume that that may have been discussed as to likely, you know, the origin of the cancer, the development that it had done, and the progression and the likely treatment Ms. Lewis would have to undergo because of it. Well, you don't pay much attention in your briefing to what happened in between February 1st and 2017, December 31st, 2019, but in between there, didn't she have a mammogram and an ultrasound that would have been read by a radiologist, another doctor who said, looking at that, apparently that same— She absolutely— —what they thought was a cyst. She absolutely— Looking at that same, telling her, nope, nope, nothing there. But if anything— Nothing there. And doesn't that actually support you? I guess I'm not understanding why you don't— It does support it, particularly the— Why don't you rely on that as much as you rely on these dates to say, at what point would she have known that the February 1st, 2017 diagnosis was wrong, much less the 2018 or whatever year that was? And we made that argument below and in our brief, and particularly that goes to— I literally see a focus on what happened in between. And particularly it goes to causation. So, I mean, all throughout this process, Ms. Lewis's medical providers are telling her it's of no concern, nothing to worry about. The same lump. The same— The same lump in her left breast. Yes. Yeah. And so we think that at a minimum, there are triable issues of material fact. And, yeah, sure, reasonable minds can disagree as to whether or not Ms. Lewis knew of the nature, extent, and cause of her cancer sitting on February 1, but it wasn't for the trial court to resolve that issue on summary judgment. And so this court can simply avoid the preemption argument. It can avoid the statutory construction of potential constitutional questions under Colorado state law by simply resolving on summary judgment. And with that, I would request to reserve the balance of my time, unless the panel has any additional questions. I do, but, Robert, why don't you stop this clock, OK? I'm not cheating you. I do rebuttal. I have a question for you. Can I go as long as I would like? No. I'm only insane once a term. A moment of insanity. Once a day. And Mr. Brown already got my moment of insanity. So I have a question, though. So on this, your interpretation of 3C, as I understand it, you've got two separate arguments. One is that it's an exemption. If the injury wasn't immediately known on February 1, 2017, then this statute of repose is inapplicable. But you also interpret it, as I read your briefs, as the equivalent of a tolling provision. So in other words, that that three-year statute of repose would only begin on, say, December 31, 2019. Which of those is your argument? I think it's primarily that what it does, subsection 3, is create a discovery rule. So you're not arguing that if she didn't know on February 1, 2017, you don't have to worry about a statute of repose? The two kind of collapse on each other. If she knew on February at that point in time, the discovery rule would have just started at that point in time. And so our argument is this, that subsection C, the trial court added language that wasn't there to say that it has to be discovered within the three-year period. And I would submit, Your Honor, that Colorado statute of repose, it's not a traditional statute of repose, considering the context in which this exception came about. I don't want to abuse the additional time that you've given me. And so I'm happy to take the additional 32 seconds I have prior to my rebuttal, just briefly explaining that. And that is, originally, the statute had A and B for knowing concealment in foreign objects. And then the Colorado Supreme Court comes out with this opinion. Can I stop you? Because you are going to get your rebuttal. But I'm still not sure that I understood, and I probably just missed it, the answer to my question. So I just want to know door number A. There used to be a show called Let's Make a Deal. You're too young to remember it. Money Hall. Money Hall, OK. You're older than I thought you were. So door number one is an exemption. She didn't know on December 31, on February 1, 2017, about an injury. You never will address this statute of repose. Because she didn't know on that day. Door number two, Money Hall, says, well, that statute of repose begins on December 31, 2019. Am I right that your argument is door number two? You're not arguing door number one? I'm not, Your Honor. I think when you look at the plain and ordinary language of the statute, that's what it says. Now, to the extent there's any ambiguity, this court's starting point has to be the Colorado Supreme Court's decision in Austin v. Litvak. And what the court there said, in the plurality opinion, was that the original statute only had A and B for foreign object and concealment cases. And the Colorado Supreme Court, in a plurality opinion, said, look, three of the justices said it violates the equal protection clause of the state constitution to fail to give the same benefit of the discovery rule as they have for A and B to negligent misdiagnosis. The fourth justice, Justice Dabowski, she says that, look, it violates a separate provision of the Colorado Constitution. Any time you employ a statute of repose to foreclose a claim when a plaintiff doesn't have a meaningful opportunity to pursue it. So then the legislature passes and adds a subsection C to address it. I think when you get there. Is there any legislative history to show that that's what they did? There was none that was addressed on that and how this came about. Because there was a lot going on in that time. I mean, there was. You had the tension between the tort reform movement and the Colorado Supreme Court, which was opposed to too much of that. And so I think that we have to do is we say, all right, well, sitting here today, negligent misdiagnosis plaintiffs under the trial court's interpretation of the statute do not have the benefit of a discovery plus two years, which A and B unquestionably do. That would certainly trigger the concern of three of the justices. And as to Justice Dabowski's concern, I don't submit that anyone would say 32 days is a reasonable period of time to pursue a claim. And so with that, Your Honor, I will reserve the balance of my time. You can answer as much as you want. I'm here all day. I do have a question about what I think is a mess in terms of this statute itself. And I thought your request to certify was apparently not well taken because it came late. But this strikes me as a potentially certifiable case. We would have no objections to certifying it. But in terms of the interpretation of the statute. Because, for instance, the Colorado Supreme Court, to me, seemed to recognize in the two cases that have considered this issue, the misdiagnosis issue, Comstock and the other, I'm trying to remember the first one. Austin? Austin, yeah. They recognized that Section 3, which contains the limitations now, A, B, and C, when it says the limitations of actions provided in subsection 1, they recognized they weren't just talking about the limitation of action.  They were talking about the repose limitation. So they recognized that, at least with A and B, the limitation of action, if you apply exceptions A and B, there is no statute of repose. There is no statute of repose. That's the issue. Why would it be any different on C? Why would you? Well, it has to be. C said, right. That's why I'm asking you. Under the constitutional acquaintance, if you don't interpret it that way. But nobody seemed to be. The district court didn't really point that out. Which, A and B, it's accepted that there's no statute of repose. But the same language in 3 applies to C, which is the limitation of actions provided in subsection 1 do not apply. So how do we get any aspect, any portion of the statute of repose applying under C? I don't believe we do. And I think that interpreting that manner is consistent with what the General Assembly did to comply with the commands of Austin versus Litvak. Maybe. I mean, and I agree. Maybe they saw Austin v. Litvak as a plurality opinion that had no relevance. We agree the statute is a mess. But again, the starting point for this court's discussion should be Austin versus Litvak. I understand that there are probably reservations as to the rational basis analysis. But as it goes to the state constitution, we need to defer to what three of the seven justices said in that regard and view Austin versus Litvak. Thank you. Thank you. See, you ended up getting as much time as you wanted anyway. Probably a little bit more. May it please the court. Elizabeth Ford Malani on behalf of the United States. The FTCA incorporates, not preempts, Colorado's statute of repose. That statute of repose sets a hard deadline. The Lewis's claim was extinguished three years after Ms. Lewis met with nurse practitioner Trexler. That hard deadline was not met. Only if section C applies, doesn't apply. Only if subsection C doesn't apply. Correct. The subsection C does not say that. Could you answer that question that I just asked because it's fresh on my mind and I apologize for interrupting so quick. Certainly. I don't want to lose that train of thought, which is why would section C possibly have a partial statute of repose built back into it when section C is subject to the same limiting language of three, which is the limitations of actions provided in subsection 1 do not apply under the following circumstances. Meaning the statute of repose and the statute of limitations do not apply. So in my mind, you've got to figure out, just like under section A and B, what is the statute of limitation. There is no statute of repose, but the statute of limitation is different. And I don't see anybody really taking that on other than the plaintiff, I guess is in some way. But that limiting language in section C. It says the limitations do not apply.  The government's position is that if 3C is met, the statute of repose is of no moment. That three-year limitation in subsection 1. But I will note, Your Honor, that 3A and 3B are a little bit different. They say the limitation of action doesn't apply, back up to subsection 1, but they have a new statute of repose period. How do we know that? Because it's not a statute of repose according to Colorado Supreme Court. It's a new statute of limitation. Well, it starts from the act or omission. So it restarts that statute of repose for two years. And that is a completely different text than the General Assembly does not. That's not what the Colorado Supreme Court said, though. They definitely said there's no statute of repose now under A and B. I just think, you see what I'm saying? I don't think I'm entirely following, Your Honor. Well, that's the way I read the Austin case. The way that I read Austin is this, that in these two certain types of medical malpractice cases, these foreign object and knowing concealment, we're going to operate the statute of repose a little bit differently. And we can come up with many reasons why that would be the case. According to the government, there's reasons why there are barriers to discovery in those sorts of cases. And so in those circumstances, instead of accrual as the important date, it's discovery of the act or omission. And that's slightly different than accrual. And so in that scenario, 3A and 3B, they start from when you actually know about. The statute of limitations. That's the statute. When you say statute of limitations, I think the government would push back. When does it accrue? For purposes of subsection 1, it accrues when on the date that the injury and the cause were known or should have been known. And when does it accrue? The statute of limitations under A and B. Same date, but the statute of repose is from discovery of act or omission. So for instance, one example could be, let's say you didn't know that a sponge was left in your body after a surgical procedure. You have no injury. You still don't know about it. Nothing has gone on. But then you get an email that this happened. You would have learned at that point, you would have discovered the act or omission. You may not have an injury, but that still is important for purposes of 3A and 3B. So I think that that discovery of the act or omission and then the accrual date, those are separate triggering dates. So it's important to separate those out. And what's really crucial is that after Austin, the General Assembly could have created a rule just like 3A and 3B and put that for negligent misdiagnosis patients in C. The General Assembly did not do so. The statute of repose operates differently in 3C. And I think that the difference in language is really telling here. I do want to touch on preemption briefly, though, before we get too deep into Austin. The government's position is that this really isn't a preemption question to decide here. The supremacy clause doesn't need to pick a winner. The FTCA only waives sovereign immunity to the extent a private party would be liable. So in this regard, we can sort of think of a two-step process. And the first step is the state's substantive law. Is that satisfied? Once the state's substantive liability is satisfied under that step one, then we get to step two and wonder if the procedural requirements of the FTCA are satisfied. Step one was not met here. So the FTCA is of no moment. A few circuit courts have described it that way. There is no clash that this court needs to resolve. But even if this court were to take the preemption question on, I think the CTS Corp case from the US Supreme Court has recognized that the degree of specificity with which you define a statute's purpose is pretty important for this preemption question. And while, of course, the purpose of the administrative exhaustion requirement is to put these sorts of claims in front of the agency first, the broader FTCA is a statute that waives sovereign immunity only to the extent a government would be liable if this was against a private defendant. So I think that that broader purpose needs to be considered. Even if you narrowly consider just the purpose of the FTCA's administrative exhaustion requirement, this is actually an easier case than some other circuit court cases have dealt with. Because the fact of the matter is the agency filing was not before the statute of repose period concluded. It did not occur till after. So in this case, it wasn't as if that agency process was cut short or hurried along. Because it was already outside of the statute of repose. Well, sure. So she finds out the day before the statute of repose expires, according to Judge Melgren, that the cancer has metastasized. She still hasn't seen an oncologist, by the way. Right. And so while she's dealing with this new news that, oh, by the way, I have metastasized cancer. So she could have filed that administrative claim the next day. And well, on February 1st. And so she didn't. So I mean, that can't be the law. Well, I think that. I mean, so she waits. So you would have had the same argument if she waited 48 hours after finding out her cancer metastasized. Or one month and two days after she found out that she had cancer. And so she had 32 days to file an administrative claim. So I think that some cases have recognized, perhaps, there is more of a tension, for purposes of the procedural requirements of the FTCA and statutes of repose, if that agency filing was made inside the statute of repose period. There is some tension there. But this court doesn't need to decide that case. Because that's not what happened here. This court could reserve that question, just as Bennett did. And Footnote 9 talks about how that is a different sort of factual circumstance that's not presented here. Well, Benton is our case. You know, Benton, what the court held open is, if the claimant has a very short window in order to file an administrative claim. And that's what I'm trying to say. I don't think you would quarrel with the fact that this fits precisely within Benton. Because she only had either two days or 32 days to file an administrative claim.  I think 32 days is the government's position. It was 32 days to file this SF-95. And I think that- 32 days when she hadn't even spoken to an oncologist about the etiology of her cancer. Right. And I think that that just comes back to- So how does she know? How does she know what the source of this cancer is? Particularly here, where in the past two years, she's had multiple misdiagnoses. Apparently, of this cancer. Although, you're only talking about the first one here. But how would she possibly know? Having been misdiagnosed, apparently, in February of 2017. And then, at least a couple times more, at least three other doctors apparently missed this. Certainly, the person who did the mammogram, the radiologist who read the mammogram and the ultrasound, missed it. How is it that she's supposed to know, on December 31st, 2019, when all she knows is this tumor is now cancer, how is she supposed to know the etiology of that? How is she supposed to know that it's the same lump that she was told was a cyst in 2017, that she was told by the radiologist who read the actual mammograms and ultrasounds in 2018? How was she to know that day? Oh, my gosh. That was from that misdiagnosis back in 2017. At a minimum, how could she know before she talked to the oncologist? And who knows if she even knew then? So, the government takes a different view on what is... Let's accept that there was a question of fact about when she knew of the cause. Then, under Colorado law, that that would not be appropriate for summary judgment. Right. So, could we go there and avoid all of these questions? That is one way to resolve it, Your Honor. But I would really push back on that she knew it was the cancer from 2017 that was still persistent. The fact of the matter is... She didn't know, is what I'm saying. How was she to know? Right. And so, when we look at medical malpractice cases, particularly in the negligent misdiagnosis context, there will always be a condition that the plaintiff sought treatment for in the beginning. That condition was a lump. There's usually not a condition in a cancer case where there's been multiple misdiagnoses of the same lump. And it's the patient who is super diligent and continues to say, I got a problem with this. I got a problem with this. Will you please biopsy this? Has to ask multiple times to finally get the biopsy. That is not the typical case. And that is the facts of this case, which I'm suggesting might mean that there was a question of fact as to whether she would have known which diagnosis was the problem. If that is one way to resolve the case, it would be the summary judgment concern about cause. We'll address those facts. Those facts. Not the general case. Certainly.  The McCullough case, I think the differences in the McCullough case with this case helps us. Because in the McCullough case, the plaintiff knew at the first appointment after the fact that she had cancer at that first time, and that was a negligent misdiagnosis. But we don't have those facts in this case, the facts we have here in that case. Precisely. Where you've got a two-year odyssey of trying to diagnose this, you know, trying to get it diagnosed, trying to get a biopsy. Only the person who's not a medical professional pushing it. We don't have those facts in any other case that you've cited. Exactly. And that's how we know that the condition changed over time. Because what we know from this summary judgment record is that when she saw nurse practitioner Trexler on February 7, 2017, she went on that date. The lump, as she was told, was nothing to worry about. So that is the condition that she sought treatment for. Over the years, that condition changed. The lump changed, and changed, and changed. The same lump. Well, we don't know that, necessarily. How was she to know that is my point. You're suggesting she had to know by February 1, or certainly by December 31 of 2019, what the cause of her injury was. How was she to know that? Colorado cases have been clear that you don't need to have an expert opinion weighing in that this negligent misdiagnosis from three years ago, that's definitely...  This is a fluid situation. She hasn't even spoken to the oncologist yet. Right. But she has facts available to her. And what's particularly meaningful... What facts does she have available? As of January 1, or January 6, 2020, she remembers back to that 2017 appointment. And she recalls that in her deposition and said, this I had forgotten about, this whole process I had forgotten about, that first appointment with nurse practitioner Trexler, but she links it back inside the repose period. She also had a mammogram and an ultrasound after that, and she remembers that too, and they told her she didn't have cancer either. Again, this is all... So why was she to know that that was the mistake? The February 1, 2017 misdiagnosis... So I would push back on this mistake concept, because I think that that comes back to, she had to know the tort liability. I think it's actually facts. What did she know? She knew that the lump went from being non-cancerous, over time, it became cancerous. That is what we're talking about is the injury. That's the worsening of the condition. And you're saying that was a change? Right, because at that first appointment, she was told it was nothing to worry about. So let's... So I just really am trying to follow up on Judge Moritz's question. So if we're looking at the statute, the Colorado statute, so if it changed, and how can it possibly be that the statute of pros is triggered pre-change? February 1, 2017. Why not January 6, 2020? Because that's, Your Honor, what subsection one says, the act or omission. Exactly, exactly. So in both, but in no event shall an action be brought more than three years after the act or omission, which gave rise to the action, and then in C, if the physical injury and its cause are not known or could not have been known. Now, whether or not we interject the three years that the district court did or not, it couldn't have begun on February 1, 2017 because it couldn't be known because it changed. That's what you said. Well, I'm not sure I'm following, Your Honor, because we're accepting the amended complaints allegations as true, and I see them out of time. I'd like to answer your question. Yeah, I'd like you to too. Assuming that you're... So you're saying that the condition changed, and so I'm just, I'm not trying, I'm really not trying to trick you or anything. I'm really just trying to understand it. So if you're saying the statute of repose began on February 1, 2017, and then you're also saying, in response to Judge Moritz, well, the condition itself changed. It wasn't a benign lump on February 1, 2017. It changed 25 days before the statute of repose would have expired January 6, 2020, and so how can it possibly be that the act or omission giving rise to the action would have existed on February 1, 2017 because that's not even the condition that existed that you're saying spurred the action. You're saying that the condition that spurred the action, you're saying happened on January 6, 2020, so wouldn't the act or omission have begun on January 6, 2020 under your scenario that the condition changed? No, Your Honor. I think this is because a fundamental disconnect between act and omission is one thing and injury and its cause are another. The former act or omission pertains to the statute of repose. It sets a hard deadline. As some cases have recognized, the statute of repose could be extinguished before someone even knows they have a claim, and that's because act or omission, the alleged negligence, is totally separated from discovery of the injury and its cause. So in this case, that is entirely possible that the act or omission, i.e., the alleged purported misdiagnosis that occurred in 2017, is separate from when she knows about the injury and its cause. That's how those can be reconciled. Thank you. Counsel, can I ask, does the government agree that the accrual date here is a question of fact? Ordinarily, but in these circumstances, because the facts are undisputed, it can be decided as a matter of law. Okay, so help me with that then. I understand that under Colorado law, but in Ms. Lewis's brief, I believe that they presented it was a question of fact. I did not read the government contest that in response. I may have missed it, but I'll give you that opportunity now. So help me understand why here it's undisputed, the accrual date, when all I hear is a pretty excited dispute over the accrual date. I don't think there's any dispute as to when Ms. Lewis knew what, because her deposition says so. On December 31st, she was informed that she had cancer. On that date, she knew of an injury. Did she know that it was the same lump that Nurse Drexler had looked at on February 1, 2017? It was in the same location. Well, yeah, but that's not my question. Or is it a fact question about whether or not it was the same lump that she learned about in January 2020, whether it was the same lump that was looked at by Nurse Drexler? And that goes to my point of, of course she didn't know when she was told several times more by several doctors that this same lump that she kept presenting for is not cancerous and even had scans. So how was she, a layperson, supposed to know the day she's told she has cancer that all these people apparently were wrong, but it was that very first person, this is that same lump, and somehow all these people were wrong, and that same lump must have persisted through all of it. Is that a question of fact? It sure sounds like it. But that was a litigation choice, right? To decide to decide that it was Nurse Practitioner Drexler whom she wanted to sue. But the fact that she has confirmation over and over that that lump is not cancerous, the same lump she's presenting for, certainly factors in to the issue of when she would have known that the cancer she's told she has that has metastasized resulted from the same lump. Because cancer doesn't get non-cancerous. It was either cancerous then, or it's a different lump. And that's possible. But she's told over and over that that lump isn't cancer. But you're saying she should have known the day she's told finally it is cancer that it was that very first diagnosis where this all went awry. So I guess I agree on a few different points. And I recognize that I'm quite over time, but I would like to answer them if it's okay with the court. So I would push back on the fact that the injury and its cause that she has to know has to be the proof positive that this person, had they done something different, I definitely wouldn't have cancer. Those are what experts provide at trial. That's just not necessarily what is required in order to know the facts for purposes of accrual. Otherwise, it would be hard to litigate any accrual concern at all, because without experts that come in and trial, we would never know that. So again, and I would, the condition for which she sought treatment was the lump. According to her complaint, and then the amended complaint, that lump was what turned into cancer. So that pre-existing condition was what got worse during the course of the repose period. Within three years, she knew about the cancer diagnosis, which is the injury here. And within three years, she connected it back and said, oh, I remember that appointment. There is not much need to know more. She doesn't need to know specific legal theories. Except whether the lump is the same lump that she's been told over and over again by several physicians isn't cancer. Well, the complaint alleges that's the case. That complaint gets filed later. We're talking about what did she know on December 31st. So I think that- You're saying a lay person should have known that on December 31st, not that her lawyer should have known it when he filed the complaint. Right. There are numerous Colorado cases, and I think that they're cited well in our brief, and I know that I'm very over time still, but that have just talked about how the legal theories is what's not required for purposes of a cruel. It's knowledge of facts. And the facts were purposes of the elements of a negligence claim. And here, those facts were known inside that three-year period, and under 3C, therefore, that repose period stood. Counselor, can I bother you with one more question? It's not bothering you. No, I was going to say, I was going to say, I accidentally interrupted you. I think this one may be a short one, though. Is this statute an affirmative defense under Colorado law? I believe it is, yes. How do we factor that into the summary judgment analysis? You know, I'd have to think about that, Your Honor. As long as there are no disputed facts as to whether or not it applies, then, yes, indeed, you can decide it as a matter of law. And again, the record is, all the facts are clear in terms of there's no dispute as to maybe she didn't get the cancer diagnosis until March. No, that's not the case. It was on December 31st. And because we have these core agreed-upon facts, I think that this still remains as a question of law. You sure? Yep. Thank you. To your point, Judge Moritz, I think the court can look to Salazar versus American Sterilizer, where the court said, suspicion of a possible connection does not necessarily put a reasonable person on notice of the nature, extent, and cause of an injury. If Ms. Lewis' surgeons, both of them, could not say what the likely progression was, whether it was related to her diagnosis years before, how could Ms. Lewis, as a living witness, Real quickly, within the 30-day period, the fact that Ms. Lewis didn't file in that period is irrelevant from our perspective because... Go ahead. You can finish. Because conflict preemption, when it relates to impossibility, the law doesn't require one to attempt the impossible to argue that. Further, when it concerns obstacle preemption, the question is congressional intent, not whether a particular plaintiff could have acted faster. So with that, Your Honor, we would ask this court to reverse the trial court's grant of summary judgment. Thank you. Thank you very much. It was very well presented by both sides. This matter will be submitted.